David P. Enzminger (SBN: 137065)
denzminger@winston.com
Michael A. Tomasulo (SBN: 179389)
mtomasulo@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:    (213) 615-1700
Facsimile:     (213) 615-1750

Louis L. Campbell (SBN:221282)
llcampbell@winston.com
Matthew R. McCullough (SBN: 301330)
mrmccullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, California 94025-4004
Telephone:    (650) 858-6500
Facsimile:     (650) 858-6550

Attorneys for Plaintiff
EPIC GAMES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIC GAMES, INC., a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACCELERATION BAY LLC, a Delaware Limited Liability Corporation,<br><br>Defendant. | **Case No.: 3:19-cv-04133**<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 6,701,344, 6,714,966, 6,829,634, 6,732,147, 6,910,069 6,920,497, AND 7,412,537**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Epic Games, Inc. ("Epic" or "Plaintiff") by and through its attorneys, alleges against Defendant Acceleration Bay, LLC ("Acceleration" or "Defendant") as follows:

**PARTIES AND BACKGROUND**

1.     Plaintiff Epic is one of the leading video game companies in the world. It develops and publishes, among other things, the "Fortnite" video game. Epic publicly released *Fortnite*'s cooperative *Save the World* game mode in or around July 2017. Epic publicly released *Fortnite*'s free-to-play *Battle Royale* game mode in or around September 2017. *Fortnite* is an extremely popular game with over two hundred and fifty million players.

2.     On information and belief, sometime around February 2015, Defendant Acceleration acquired certain rights to certain patents previously assigned to The Boeing Company. Those patents include U.S. Patent Nos. 6,701,344 ("the '344 Patent"), 6,714,966 ("the '966 Patent"), 6,829,634 ("the '634 Patent"), 6,732,147 ("the '147 Patent"), 6,910,069 ("the '069 Patent"), 6,920,497 ("the '497 Patent") and 7,412,537 ("the '537 Patent) (collectively, the "Asserted Patents"). The Asserted Patents are attached as Exhibits 1-7.

3.     On December 28, 2018, Acceleration sent a letter to Epic's address. The letter states without explanation that Epic's videogame *Fortnite* "requires a license." The December 28 letter makes an explicit and direct charge of infringement, stating that six of the Asserted Patents are "Patents Infringed By Epic Games."

4.     The December 28 letter appears to have been a "cut-and-paste" from a letter sent to a totally unrelated company. For instance, it states that "[UNRELATED COMPANY] has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and services identified in this letter" and concludes by stating "[w]e look forward to your working with [UNRELATED COMPANY] on a business solution, and thank you in advance for your prompt attention to this matter." Therefore, on information and belief, Acceleration sent the same generic, substance-free form letter alleging infringement to at least one, and perhaps many, other companies.

5.     On March 4, 2019, Acceleration sent a second letter to Epic's address. This letter states without explanation that "[o]ur analysis of our patent portfolio and Epic Games' multi-player games indicates use of Acceleration Bay patented technologies, at minimum, the following games

1    require a license: Fortnite: Save the World, Fortnite Battle Royale, and potentially other games."

2    (hereinafter, the "Accused Products").

3        6.    As with the prior letter, the March 4 letter makes an explicit and direct charge of

4    infringement, stating that six of the Asserted Patents are "Patents Infringed By Epic Games."

5        7.    Neither of these letters mention the '537 Patent, but Acceleration subsequently

6    advised that the '537 Patent was at issue as well.

7        8.    On our around July 10, 2019, representatives of Epic and Acceleration had a

8    teleconference.

9        9.    None of Acceleration's communications provided an explanation for its repeated

10   charges of infringement. No claim charts have been provided. Neither letter explains what claims

11   Epic allegedly infringes, or which patents or claims are supposedly infringed by each of the games

12   named in the letters.

13       10.   In addition, on information and belief, both letters contain statements about

14   Acceleration itself that are incorrect or, at best, misleading. For instance, the letters state that

15   Acceleration was "[f]ounded in 2012" and that it is a "technology incubator" that "partners with

16   inventors, corporations and entrepreneurs to accelerate growth in creating innovative companies."

17       11.   On information and belief, and based on publicly available records and publicly

18   available Court-filings, Acceleration is not a "technology incubator" and was not "[f]ounded in

19   2012."

20       12.   Acceleration was formed by its litigation counsel in August 2014 for the purpose of

21   acquiring and enforcing the Asserted Patents.

22       13.   Acceleration is not a "technology incubator" and does not "partner" with "inventors,

23   corporations and entrepreneurs" and does not "accelerate growth in creating innovative companies."

24       14.   Publicly available information does not indicate that Acceleration provides any

25   product or service or has any non-litigation-based income or revenue.

26       15.   On information and belief, Acceleration is exclusively in the business of monetizing

27   patents acquired from third parties.

28       16.   Epic's games do not infringe the Asserted Patents.

17.     The claims of six of the seven Asserted Patents (all but the '497) all relate to a computer network and/or broadcast channel with an *m*-regular, incomplete topology.

18.     These six Asserted Patents require a specific "peer to peer" computer network where computers in the network communicate directly with each other as opposed to communicating through a central server.

19.     Certain of the claims are directed to a computer network.

20.     Computer networks existed and were in public use prior to the alleged inventions of the Asserted Patents.

21.     Certain of the claims are directed to a broadcast channel.

22.     The Asserted Patents state that "[e]ach computer that is connected to the broadcast channel receives all messages that are broadcast while it is connected." *See, e.g.*, Ex. 1, '344 Patent at 4:12–14.

23.     Broadcast channels existed and were in public use prior to the alleged inventions of the Asserted Patents.

24.     The "Background" section of the Asserted Patents identifies "client/server middleware systems" as prior art to the Asserted Patents. *See, e.g.*, Ex. 1, Background '344 Patent at 1:58–2:14.

25.     The Asserted Patents state that "The client/server middleware systems provide a server that coordinates the communications between the various clients who are sharing the information." *See, e.g.*, Ex. 1, Background '344 Patent at 1:58–60.

26.     Client-server middleware systems where a server coordinates the communications between the various clients who are sharing the information existed and were in public use prior to the alleged inventions of the Asserted Patents.

27.     The main purported point of novelty for these six patents is that the claimed network forms an *m*-regular, incomplete graph instead of the prior art client-server or full mesh networks.

28.     The claims of these patents all require that (1) each participant/computer in the network must have connections to at least three other neighboring participants.

29.     The claims of these patents all require that (2) the network must be "*m*-regular" where each participant is connected to the exact same number, *m*, of neighbor participants.

30.     The claims of these patents all require that (3) the network must be incomplete – *m* must be at least two less than the total number of participants.

31.     In other words, each participant must be connected to at least three neighbor participants, and no participant can be connected to all of the other participants in the network.

32.     Before the technologies covered by the Asserted Patents were allegedly invented, other types of networks such as client-server and "full mesh" networks were well known and used for videogames.

33.     Multiplayer videogames using computer networks existed and were in public use prior to the alleged inventions of the Asserted Patents.

34.     Multiplayer videogames using broadcast channels existed and were in public use prior to the alleged inventions of the Asserted Patents.

35.     The Asserted Patents state that client-server systems are "not particularly well suited to sharing of information among many participants." *See, e.g.,* Ex. 1, Background section of '344 Patent at 1:65–67.

36.     The Asserted Patents state that client-server networks are inferior and different from the claimed invention because, with a client-server network, "a failure at a single computer (i.e., the server) would prevent communications between any of the clients." *See, e.g.*, Ex. 1, Background section of '344 Patent at 1:58–2:14.

37.     In contrast, the Asserted Patents contend that "[t]he use of a 4-regular graph means that a computer would become disconnected from the broadcast channel only if all four of the connections to its neighbors fail." *See, e.g.*, Ex. 1, Background section of '344 Patent at 4:39-42.

38.     A comparison of the three network types is shown below:



39.     At all times, the Accused Products have used the non-infringing, client-server architecture that was well known in the prior art.

40.     In this architecture, *Fortnite* players are connected to a server and send and receive information only to/from a server.

41.     *Fortnite* players are not connected to other *Fortnite* players and do not directly exchange information with other *Fortnite* players.

42.     The final Asserted Patent is the '497 Patent. Neither Epic nor the Accused Products infringe this patent.

43.     The claims of the '497 Patent require, among other things, the use of a non-random "port ordering algorithm" where "the communications ports selected by the port ordering algorithm" are re-ordered.

44.     Thus, for instance, Claim 9 of the '497 Patent claims a "component in a computer system for locating a call-in port of a portal computer" which includes "means for selecting the call-in port of the identified portal computer using a port ordering algorithm" and "means for re-ordering the communications ports selected by the port ordering algorithm."

45.     *Fortnite* does not "select" a "call-in port" of an identified portal computer using a non-random port ordering algorithm and does not include means for re-ordering the communications ports selected by any non-random port ordering algorithm.

46.     For these and many other reasons, Epic does not infringe any claim of the Asserted Patents.

**NATURE OF THE ACTION**

47.   This is an action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, for a declaratory judgment that Epic does not infringe any of the Asserted Patents, including through its *Fortnite* products.

48.   Epic seeks a declaratory judgment that neither it nor the Accused Products infringe any of the Asserted Patents under the Patent Laws of the United States, 35 U.S.C. §§ 101, *et seq.*

**PARTIES, JURISDICTION AND VENUE**

49.   The parties to this lawsuit are Plaintiff Epic and Defendant Acceleration.

50.   Plaintiff Epic is a Maryland corporation with its principal place of business at 620 Crossroads Blvd, Cary, North Carolina, 27518.

51.   Defendant Acceleration, upon information and belief, is a Delaware limited liability company, which has at all times represented that it has a principal place of business within the Northern District of California. In multiple complaints against other companies, Acceleration has pleaded that it has a principal place of business in this District. Presently, Acceleration's website states that its principal and only place of business is located at 951 Mariners Island Blvd, San Mateo, California, 94404.  Both of the letters that Acceleration sent to Epic bear this address as well.

52.   This is an action under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, against Defendant for a declaration that, pursuant to the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, the disputed claims of U.S. Patent Nos. 6,701,344, 6,714,966, 6,829,634, 6,732,147, 6,910,069, 7,412,537, and 6,920,497 are not infringed by Plaintiff or its games. Jurisdiction as to these claims is conferred on this Court by 28 U.S.C. §§ 1331 and 1338(a).

53.   This Court has personal jurisdiction over Defendant Acceleration at least because of its continuous and systematic contacts with the State of California and with this District. As noted above, Acceleration's principal place of business is located within this District.  Acceleration has also registered to do business in California with the California Secretary of State since March 13, 2015, and keeps a designated agent for service of process in Foster City, California. Acceleration has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

54.     Venue is proper in this jurisdiction under 28 U.S.C. §§ 1391 and 1400(b), at least because Defendant maintains its principal place of business in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendant purposefully directed activities to this district.

55.     An actual controversy exists between Defendant and Plaintiff as to whether Plaintiff infringes the Asserted Patents.  In both its December 28, 2018 and March 4, 2019 letters, Acceleration identifies specific patent numbers, made an explicit and direct statement that Epic is infringing the Asserted Patents, and asserted that *Fortnite* "require[s] a license."  The March 4 letter further adds that Acceleration's "analysis" of "Epic Games' multi-player games indicates use of Acceleration Bay patented technologies."

56.     Epic denies that any of its activities or the Accused Products infringe any claim of the Asserted Patents purportedly owned by Defendant.

57.     Epic is aware that Acceleration has asserted the same six patents against other major videogame publishers, even though Epic can see no applicability of the claimed technology to the videogame industry.  In addition, Acceleration's December 28, 2018 letter to Epic also included claims regarding an unrelated third party in the videogame industry. This, in combination with Acceleration's litigious history with other companies in the industry, suggests that Acceleration's business model is limited to enforcing these patents.

58.     On information and belief, Acceleration engages in no business activity other than seeking to enforce the Asserted Patents.  As a result of Defendant's actions and repeated licensing demands, Plaintiff has a reasonable apprehension that Defendant will commence litigation against Plaintiff on the Asserted Patents.

59.     There is an immediate, real, and substantial justiciable controversy between Plaintiff and Defendant as to its purported right to threaten or maintain suit for infringement of the Asserted Patents; as to the scope and enforceability thereof; and as to whether Plaintiff or any Accused Product infringes any enforceable claims of the Asserted Patents.  This controversy is of such immediacy and reality as to warrant declaratory relief so that the parties may ascertain their rights and duties with respect to the Asserted Patents.  Therefore, without waiver of any rights, including

the right to challenge prudential standing, Plaintiff brings this declaratory judgment action seeking a declaration that it and the Accused Products do not infringe any of the Asserted Patents.

## INTRADISTRICT ASSIGNMENT

60.    This is an intellectual property action subject to district-wide assignment pursuant to Local Rules 3-2(c) and 3-5(b).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(Declaratory Judgment of Non-Infringement of the '344 Patent)

61.    Plaintiff incorporates herein by reference and re-alleges all preceding paragraphs as though fully set forth herein.

62.    Defendant Acceleration has alleged and continues to assert that Plaintiff and its Accused Products and services infringe the '344 Patent.

63.    Claims 1–11 and 16–19 of the '344 Patent were cancelled, and claim 21 added in *inter partes* review proceedings before the USPTO. *See* Ex. 1.

64.    Dependent claim 12 and the surviving independent claims of the '344 Patent are shown below (with claim element enumeration added for convenience).

| Dependent Claim 12 (inheriting all limitations from Claim 1) |
|---|
| **12-a.** A computer network for providing a game environment for a plurality of participants, |
| **12-b**. each participant having connections to at least three neighbor participants, |
| **12-c.** wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants and |
| **12-d**. wherein each participant sends data that it receives from a neighbor participant to its other neighbor participants, |
| **12-e.** further wherein the network is m-regular, where m is the exact number of neighbor participants of each participant and |
| **12-f.** further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph. |
| **12-g.** The computer network of claim 1 wherein the interconnections of participants form a broadcast channel for a game of interest. |
| **Claim 13** |
| **13-a**. A distributed game system comprising: |
| **13-b.** a plurality of broadcast channels, each broadcast channel for playing a game, |
| **13-c.** each of the broadcast channels for providing game information related to said game to a plurality of participants, |
| **13-d.** each participant having connections to at least three neighbor participants, |
| **13-e.** wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants and |

| |
|---|
| **13-f.** wherein each participant sends data that it receives from a neighbor participant to its neighbor participants, |
| **13-g.** further wherein the network is m-regular, where m is the exact number of neighbor participants of each participant and |
| **13-h.** further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph; |
| **13-i.** means for identifying a broadcast channel for a game of interest; |
| **13-j.** and means for connecting to the identified broadcast channel. |
| **Substitute Claim 21** |
| **21-a.** A computer network for providing a game environment for a plurality of gaming participants, each gaming participant having connections to at least three neighbor gaming participants, |
| **21-b.** wherein an originating gaming participant sends gaming data to the other gaming participants by sending the gaming data through each of its connections to its neighbor gaming participants and |
| **21-c.** wherein each gaming participant sends gaming data that it receives from a neighbor gaming participant to its other neighbor gaming participants, |
| **21-d.** further wherein the network is m-regular, where m is the exact number of neighbor gaming participants of each gaming participant, |
| **21-e.** further wherein the number of gaming participants is at least two greater than m thus resulting in a non-complete graph, |
| **21-f.** further wherein the connections between the gaming participants are peer-to-peer connections, |
| **21-g.** further wherein the network is formed through a broadcast channel that overlays an underlying network |
| **21-h.** further wherein the game environment is provided by at least one game application program executing on each computer of the computer network that interacts with the broadcast channel, and |
| **21-i.** further wherein gaming participants can join and leave the network using the broadcast channel. |

65.     Plaintiff does not infringe any claim of the '344 Patent, at least because, by way of non-limiting example, Plaintiff does not make, use, or sell the "computer network" or "distributed game system" as required by the claims of the '344 Patent.

66.     Plaintiff does not infringe any of the claims of the '344 Patent, at least because, by way of non-limiting example, the Accused Products do not meet the following claim limitations of the claims shown above: claim 12, elements 12-a through 12-f; claim 13, elements 13-a through 13-j; claim 18, elements 18-a through 18-e; and claim 21, elements 21-a through 21-i.

67.     For instance, each "participant" in *Fornite* is not connected to at least three "neighbor" participants as required by elements 12-b, 13-d and 21-a.

68.     *Fortnite* does not form *m*-regular and incomplete/non-complete networks as required by elements 12-e, 12-f, 13-g, 13-h, 18-e, 21-d, and 21-e.

69.    *Fortnite* does not send data to the other participants and nodes as required by elements 12-c, 12-d, 13-e, 13-f, 18-c, 18-d, 21-b, and 21-c.

70.    Plaintiff's activities, Accused Products, and services have not and do not directly infringe, do not infringe by inducement, and do not contributorily infringe any enforceable claims of the '344 patent.

71.    Plaintiff's activities, Accused Products, and services have not and do not infringe, willfully or otherwise, any enforceable claims of the '344 Patent.

72.    Plaintiff's activities, Accused Products, and services have not and do not infringe, literally or under the doctrine of equivalents, any enforceable claims of the '344 Patent.

73.    In 2006, Boeing licensed the '344 Patent to Sony.

74.    Sony makes multiplayer videogame products that, according to Acceleration, meet the limitations of the claims of the '344 patent.

75.    Sony did not mark the '344 Patent number on any such Sony products.

76.    Acceleration has not provided constructive notice of infringement of the '344 Patent to Plaintiff.

77.    As to the '344 Patent, Plaintiff has not complied with the requirements of 35 U.S.C. § 287(a).

78.    An actual controversy thus exists between Plaintiff and Defendant as to whether the Accused Products infringe the '344 Patent.

79.    Plaintiff seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Plaintiff and each of the Accused Products is not infringing and has not infringed the '344 Patent and granting Plaintiff all other declaratory relief to which it may be entitled.

**SECOND CAUSE OF ACTION**

(Declaratory Judgment of Non-Infringement of the '966 Patent)

80.    Plaintiff incorporates herein by reference and re-alleges all preceding paragraphs as though fully set forth herein.

81.     Defendant Acceleration has alleged and continues to assert that Plaintiff and its Accused Products and services infringe the '966 Patent.

82.     Claims 1–11 and 16–17 of the '966 Patent were cancelled, and claim 19 added in *inter partes* review proceedings before the USPTO. *See* Ex. 2.

83.     Dependent claim 12 and the surviving independent claims of the '966 Patent are shown below (with claim element enumeration added for convenience).

| Dependent Claim 12 (inheriting all limitations from Claim 1) |
|---|
| **12-a.** A computer network for providing an information delivery service for a plurality of participants, |
| **12-b.** each participant having connections to at least three neighbor participants, |
| **12-c.** wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants and |
| **12-d.** wherein each participant sends data that it receives from a neighbor participant to its other neighbor participants, |
| **12-e.** further wherein the network is m-regular, where m is the exact number of neighbor participants of each participant and |
| **12-f.** further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph. |
| **12-g.** The computer network of claim 1 wherein the interconnections of participants form a broadcast channel for a topic of interest. |
| **Claim 13** |
| **13-a.** An information delivery service comprising: |
| **13-b.** a plurality of broadcast channels, each broadcast channel for distributing information relating to a topic, |
| **13-c.** each of the broadcast channels for providing said information related to a topic to a plurality of participants, |
| **13-d.** each participant having connections to at least three neighbor participants, |
| **13-e.** wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants and |
| **13-f.** wherein each participant sends data that it receives from a neighbor participant to its neighbor participants, |
| **13-g.** further wherein the network is m-regular, where m is the exact number of neighbor participants of each participant and |
| **13-h.** further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph; |
| **13-i.** means for identifying a broadcast channel for a topic of interest; and |
| **13-j.** means for connecting to the identified broadcast channel. |
| **Substitute Claim 19** |
| **19-a.** A computer network for providing an information delivery service for a plurality of participants, each participant having connections to at least three neighbor participants, |
| **19-b.** wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants and |
| **19-c.** wherein each participant sends data that it receives from a neighbor participant to its other neighbor participants, |
| **19-d.** further wherein the network is m-regular, where m is the exact number of neighbor participants of each participant, and further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph |
| **19-e.** further wherein the connections are peer-to-peer connections, |

11

**19-f.** further wherein the network is formed through a broadcast channel that overlays an underlying network,

**19-g.** further wherein the information delivery service is provided by at least one information delivery service application program executing on each computer of the computer network that interacts with the broadcast channel,

**19-h.** and further wherein participants can join and leave the network using the broadcast channel.

84.   Plaintiff does not infringe any claim of the '966 Patent, at least because, by way of non-limiting example, Plaintiff does not make, use, or sell the "computer network" or "information delivery service" as required by the claims of the '966 Patent.

85.   Plaintiff does not infringe any of the asserted claims, at least because, by way of non-limiting example, the Accused Products do not meet the following limitations of the claims shown above: claim 12, elements 12-a to 12-e, claim 13, elements 13-a to 13-g and 13-i to 13-j, and claim 19, elements 19-a to 19-h.

86.   For instance, each "participant" in *Fornite* is not connected to at least three "neighbor" participants as required by elements 12-b, 13-d and 19-a.

87.    *Fortnite* does not form *m*-regular and incomplete/non-complete networks as required by elements 12-e, 12-f, 13-g, 13-h, and 19-d.

88.   *Fortnite* does not send data to the other participants and nodes as required by elements 12-c, 12-d, 13-e, 13-f, 19-b, and 19-c.

89.   Plaintiff's activities, Accused Products, and services have not and do not directly infringe, do not infringe by inducement, and do not contributorily infringe any enforceable claims of the '966 Patent.

90.   Plaintiff's activities, Accused Products, and services have not and do not infringe, willfully or otherwise, any enforceable claims of the '966 Patent.

91.   In 2006, Boeing licensed the '966 Patent to Sony.

92.   Sony makes multiplayer videogame products that, according to Acceleration, meet the limitations of the claims of the '966 patent.

93.   Sony did not mark the '966 Patent number on any such Sony products.

94.   Acceleration has not provided constructive notice of infringement of the '966 Patent to Plaintiff.

1    95.   As to the '966 Patent, Plaintiff has not complied with the requirements of 35 U.S.C.

2    § 287(a).

3    96.   Plaintiff's activities, Accused Products, and services have not and do not infringe,

4    literally or under the doctrine of equivalents, any enforceable claims of the '966 Patent. An actual

5    controversy thus exists between Plaintiff and Defendant as to whether the Accused Products infringe

6    the '966 Patent.

7    97.   Plaintiff seeks a declaratory judgment from this Court under Rule 57 of the Federal

8    Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Plaintiff and each of the Accused

9    Products is not infringing and has not infringed the '966 Patent and granting Plaintiff all other

10   declaratory relief to which it may be entitled.

11                              **THIRD CAUSE OF ACTION**

12               (Declaratory Judgment of Non-Infringement of the '634 Patent)

13   98.   Plaintiff incorporates herein by reference and re-alleges all preceding paragraphs as

14   though fully set forth herein.

15   99.   Defendant Acceleration has alleged and continues to assert that Plaintiff and its

16   Accused Products and services infringe the '634 Patent.

17   100.   Claims 1–9 of the '634 Patent were cancelled, and substitute claim 25 added in *inter*

18   *partes* review proceedings before the USPTO. *See* Ex. 3.

19   101.   Claims 19 and 22 have been ruled invalid for covering ineligible subject matter by the

20   District Court for the District of Delaware. Specifically, the claimed computer-readable medium in

21   claims 19 and 22 was construed to include carrier waves. *See e.g.*, *Acceleration Bay LLC v.*

22   *Activision Blizzard, Inc.*, 324 F.Supp.3d 470, 487 (D. Del. 2018). Claims 19 and 22 were also held

23   invalid as being indefinite.  *See id*. at 479.  Accordingly, claim 19 and all claims depending from

24   independent claim 19 have effectively been held invalid, subject to any appeal Acceleration may be

25   entitled to make.

26   102.   The surviving independent claims of the '634 Patent are original claim 10 and

27   substitute claim 25, both of which is shown below (with claim element enumeration added for

28   convenience).

| Claim 10 |
|---|
| **10-a.** A non-routing table based broadcast channel for participants, comprising: |
| **10-b.** a communications network that provides peer-to-peer communications between the participants connected to the broadcast channel; and |
| **10-c.** for each participant connected to the broadcast channel, an indication of four neighbor participants of that participant; and |
| **10-d.** a broadcast component that receives data from a neighbor participant using the communications network and that sends the received data to its other neighbor participants to effect the broadcasting of the data to each participant of the to broadcast channel, |
| **10-e.** wherein the network is m-regular and m-connected, where m is the number of neighbor participants of each participant, and |
| **10-f.** further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph. |
| **Substitute Claim 25** |
| **25-a.** A non-routing table based computer network having a plurality of participants, each participant being an application program, and each participant having connections to at least three neighbor participants, |
| **25-b.** wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants, wherein each participant sends data that it receives from a neighbor participant to its other neighbor participants, |
| **25-c.** wherein data is numbered sequentially so that data received out of order can be queued and rearranged, |
| **25-d.** further wherein the network is m-regular and m-connected, where m is the number of neighbor participants of each participant, and further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph, |
| **25-e.** further wherein the connections are peer-to-peer connections, further wherein the network is an overlay network that overlays an underlying network, |
| **25-f.** further wherein each participant can interact with a broadcast channel with a channel type and a change instance, and |
| **25-g.** further wherein the network is dynamic and participants can join and leave the network using the broadcast channel. |

103.   Plaintiff does not infringe any claim of the '634 Patent, at least because, by way of non-limiting example, Plaintiff does not make, use, or sell the "computer network" or "communications network" as required by the claims of the '634 Patent.

104.   Plaintiff does not infringe any of the claims of the '634 Patent, at least because, by way of non-limiting example, the Accused Products do not meet the following claim limitations of the claim shown above: claim 10, elements 10-a to 10-e; claim 25, elements 25-a to 25-g.

105.   For instance, each "participant" in *Fornite* does not have "four neighbor participants" as required by element 10-c and each participant does not have "connections to at least three neighbor participants" as required by element 25-a.

106.   *Fortnite* does not form *m*-regular and incomplete/non-complete networks as required by elements 10-e, 10-f, and 25-d.

107.   *Fortnite* does not send data to the other participants and nodes as required by elements 10-d and 25-b.

108.   Plaintiff's activities, Accused Products, and services have not and do not directly infringe, do not infringe by inducement, and do not contributorily infringe any enforceable claims of the '634 Patent.

109.   Plaintiff's activities, Accused Products, and services have not and do not infringe, willfully or otherwise, any enforceable claims of the '634 Patent.

110.   Plaintiff's activities, Accused Products, and services have not and do not infringe, literally or under the doctrine of equivalents, any enforceable claims of the '634 Patent.

111.   In 2006, Boeing licensed the '634 Patent to Sony.

112.   Sony makes multiplayer videogame products that, according to Acceleration, meet the limitations of the claims of the '634 patent.

113.   Sony did not mark the '634 Patent number on any such Sony products.

114.   Acceleration has not provided constructive notice of infringement of the '634 Patent to Plaintiff.

115.   As to the '634 Patent, Plaintiff has not complied with the requirements of 35 U.S.C. § 287(a).

116.   An actual controversy thus exists between Plaintiff and Defendant as to whether the Accused Products infringe the '634 Patent.

117.   Plaintiff seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Plaintiff and each of the Accused Products is not infringing and has not infringed the '634 Patent and granting Plaintiff all other declaratory relief to which it may be entitled.

## FOURTH CAUSE OF ACTION

(Declaratory Judgment of Non-Infringement of the '069 Patent)

118.   Plaintiff incorporates herein by reference and re-alleges all preceding paragraphs as though fully set forth herein.

119.   Defendant Acceleration has alleged and continues to assert that Plaintiff and its Accused Products and services infringe the '069 Patent.

120.   The independent claims of the '069 Patent read as follows (with claim element enumeration added for convenience):

| Claim 1 |
| --- |
| **1-a.** A computer-based, non-routing table based, non-switch based method for adding a participant to a network of participants, each participant being connected to three or more other participants, the method comprising: |
| **1-b.** identifying a pair of participants of the network that are connected |
| **1-c.** wherein a seeking participant contacts a fully connected portal computer, |
| **1-d.** which in turn sends an edge connection request to a number of randomly selected neighboring participants to which the seeking participant is to connect; |
| **1-e.** disconnecting the participants of the identified pair from each other; and |
| **1-f.** connecting each participant of the identified pair of participants to the seeking participant. |

| Claim 14 |
| --- |
| **14-a.** A computer-based, non-switch based method for adding nodes to a graph that is m-regular and m-connected to maintain the graph as m-regular, where m is four or greater, the method comprising: |
| **14-b.** identifying p pairs of nodes of the graph that are connected, where p is one half of m, wherein a seeking node contacts a fully connected portal node, which in turn sends an edge connection request to a number of randomly selected neighboring nodes to which the seeking node is to connect; |
| **14-c.** disconnecting the nodes of each identified pair from each other; and |
| **14-d.** connecting each node of the identified pairs of nodes to the seeking node. |

121.   Plaintiff does not infringe any of the claims of the '069 Patent, at least because, by way of non-limiting example, the Accused Products do not meet the following claim limitations of the claims shown above: claim 1, elements 1-a to 1-f; claim 14, elements 14-a to 14-d.

122.   Each participant in *Fortnite* is not "connected to three or more other participants" as required by element 1-a and each "node" is not connected to four or greater other "nodes" as required by element 14-a.

123.   *Fortnite* does not identify a pair of participants which are connected as required by elements 1-b and 14-b.

124.   Plaintiff's activities, Accused Products, and services have not and do not directly infringe, do not infringe by inducement, and do not contributorily infringe any enforceable claims of the '069 Patent.

125.   Plaintiff's activities, Accused Products, and services have not and do not infringe, willfully or otherwise, any enforceable claims of the '069 Patent.

16

126.   Plaintiff's activities, Accused Products, and services have not and do not infringe, literally or under the doctrine of equivalents, any enforceable claims of the '069 Patent.

127.   In 2006, Boeing licensed the '069 Patent to Sony.

128.   Sony makes multiplayer videogame products that, according to Acceleration, meet the limitations of the claims of the '069 patent.

129.   Sony did not mark the '069 Patent number on any such Sony products.

130.   Acceleration has not provided constructive notice of infringement of the '069 Patent to Plaintiff.

131.   As to the '069 Patent, Plaintiff has not complied with the requirements of 35 U.S.C. § 287(a).

132.   An actual controversy thus exists between Plaintiff and Defendant as to whether the Accused Products infringe the '069 Patent.

133.   Plaintiff seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Plaintiff and each of the Accused Products is not infringing and has not infringed the '069 Patent and granting Plaintiff all other declaratory relief to which it may be entitled.

## FIFTH CAUSE OF ACTION

(Declaratory Judgment of Non-Infringement of the '147 Patent)

134.   Plaintiff incorporates herein by reference and re-alleges all preceding paragraphs as though fully set forth herein.

135.   Defendant Acceleration has alleged and continues to assert that Plaintiff and its Accused Products and services infringe the '147 Patent.

136.   Claims 11, 15–16 have been held invalid as covering ineligible subject matter by the District Court for the District of Delaware.

137.   The claimed computer-readable medium of claims 11, 15, and 16 was construed to include carrier waves. *See* e.g., *Acceleration Bay LLC v. Activision Blizzard, Inc*., 324 F.Supp.3d 470, 487 (D. Del. 2018). Accordingly, claim 11 and all claims depending from independent claim 11 have been effectively held invalid, subject to any appeal Acceleration may be entitled to make.

138. The surviving independent claim of the '147 Patent is shown below (with claim element enumeration added for convenience).

| Claim 1 |
|---|
| **1-a.** A method of disconnecting a first computer from a second computer, the first computer and the second computer being connected to a broadcast channel, said broadcast channel forming an m-regular graph where m is at least 3, the method comprising: |
| **1-b.** when the first computer decides to disconnect from the second computer, the first computer sends a disconnect message to the second computer, said disconnect message including a list of neighbors of the first computer; |
| **1-c.** and when the second computer receives the disconnect message from the first computer, the second computer broadcasts a connection port search message on the broadcast channel to find a third computer to which it can connect in order to maintain an m-regular graph, |
| **1-d.** said third computer being one of the neighbors on said list of neighbors. |

139. Plaintiff does not infringe any of the claims of the '147 Patent, at least because, by way of non-limiting example, the Accused Products do not meet the following claim limitations of the claim shown above: claim 1, elements 1-a to 1-d.

140. *Fortnite* does not form $m$-regular networks when $m$ is at least 3 as required by element 1-a, and each computer is not connected to at least three other computers, as required by this claim element.

141. In *Fortnite*, when a first computer decides to disconnect from a second computer, the first computer does not "send a disconnect message to the second computer, said disconnect message including a list of neighbors of the first computer" as required by element 1-b.

142. In *Fortnite*, even if a server receives a disconnection message, the server would not "broadcast[] a connection port search message on the broadcast channel to find a third computer to which it can connect in order to maintain an m-regular graph" as required by element 1-c.

143. Plaintiff's activities, Accused Products, and services have not and do not directly infringe, do not infringe by inducement, and do not contributorily infringe any enforceable claims of the '147 Patent.

144. Plaintiff's activities, Accused Products, and services have not and do not infringe, willfully or otherwise, any enforceable claims of the '147 Patent.

145. Plaintiff's activities, Accused Products, and services have not and do not infringe, literally or under the doctrine of equivalents, any enforceable claims of the '147 Patent.

146. In 2006, Boeing licensed the '147 Patent to Sony.

18

147.   Sony makes multiplayer videogame products that, according to Acceleration, meet the limitations of the claims of the '147 patent.

148.   Sony did not mark the '147 Patent number on any such Sony products.

149.   Acceleration has not provided constructive notice of infringement of the '634 Patent to Plaintiff.

150.   As to the '147 Patent, Plaintiff has not complied with the requirements of 35 U.S.C. § 287(a).

151.   An actual controversy thus exists between Plaintiff and Defendant as to whether the Accused Products infringe the '147 Patent.

152.   Plaintiff seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Plaintiff and each of the Accused Products is not infringing and have not infringed the '147 Patent and granting Plaintiff all other declaratory relief to which it may be entitled.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '497 Patent)

153.   Plaintiff incorporates herein by reference and re-alleges all preceding paragraphs as though fully set forth herein.

154.   Defendant Acceleration has alleged and continues to assert that Plaintiff and its Accused Products and services infringe the '497 Patent.

155.   Claims 1, 3–5, and 7–8 of the '497 Patent were cancelled in *inter partes* review proceedings before the USPTO. *See* Ex. 6.

156.   The surviving claims of the '497 Patent depend from either cancelled claim 1 and claim 9, both of which are shown below (with claim element enumeration added for convenience).

| **Claim 1 (cancelled)** |
| --- |
| **1-a.** A method in a computer for locating a computer through which to connect to a network, the method comprising: |
| **1-b.** providing an identification of a portal computer or a plurality of portal computers, the portal computer or the plurality of portal computers having a communications port or communications ports with a call-in port being enabled for communications when the portal computer or the plurality of portal computers is in a state to coordinate the connection of a seeking computer to the network, |
| **1-c.** wherein the call-in port is a type of communications port; |

| |
|---|
| **1-d.** selecting the communications port or communications ports of the portal computer or the plurality of portal computers and attempting to communicate with the selected communications port or communications ports until communications with the call-in port is successful, |
| **1-e.** wherein a port ordering algorithm is used to identify the call-in port, and |
| **1-f.** wherein the communications ports selected by the port ordering algorithm may be reordered; and |
| **1-g.** using the call-in port to request that the portal computer or the plurality of portal computers coordinate the connecting of the seeking computer to the network. |
| **Claim 9** |
| **9-a.** A component in a computer system for locating a call-in port of a portal computer, comprising: |
| **9-b.** means for identifying the portal computer, the portal computer having a dynamically selected call-in port for communicating with other computers; |
| **9-c.** means for identifying the call-in port of the identified portal computer by repeatedly trying to establish a connection with the identified portal computer through contacting a communications port or communications ports until a connection is successfully established; |
| **9-d.** means for selecting the call-in port of the identified portal computer using a port ordering algorithm; and |
| **9-e.** means for re-ordering the communications ports selected by the port ordering algorithm. |

157.   Plaintiff does not infringe claim 9 of the '497 Patent, at least because, by way of non-limiting example, Plaintiff does not make, use or sell the "component in a computer system for locating a call-in port of a portal computer" as required by element 9-a.

158.   Plaintiff does not infringe any of the claims of the '497 Patent, at least because, by way of non-limiting example, the Accused Products do not meet the following claim limitations of the claims shown above: claim 1, elements 1-b to 1-g; and claim 9, elements 9-b to 9-e.

159.   *Fortnite* does not use a port ordering algorithm as required by elements 1-e and 9-d.

160.   *Fortnite* does not reorder the ports selected by the port ordering algorithm as required by elements 1-f and 9-e.

161.   Plaintiff's activities, products, and services have not and do not directly infringe, do not infringe by inducement, and do not contributorily infringe any enforceable claims of the '497 Patent.

162.   Plaintiff's activities, Accused Products, and services have not and do not infringe, willfully or otherwise, any enforceable claims of the '497 Patent.

163.   Plaintiff's activities, Accused Products, and services have not and do not infringe, literally or under the doctrine of equivalents, any enforceable claims of the '497 Patent.

164.   In 2006, Boeing licensed the '497 Patent to Sony.

1   165.   Sony makes multiplayer videogame products that, according to Acceleration, meet

2   the limitations of the claims of the '497 patent.

3   166.   Sony did not mark the '497 Patent number on any such Sony products.

4   167.   Acceleration has not provided constructive notice of infringement of the '497 Patent

5   to Plaintiff.

6   168.   As to the '497 Patent, Plaintiff has not complied with the requirements of 35 U.S.C.

7   § 287(a).

8   169.   An actual controversy thus exists between Plaintiff and Defendant as to whether the

9   Accused Products infringe the '497 Patent.

10   170.   Plaintiff seeks a declaratory judgment from this Court under Rule 57 of the Federal

11   Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Plaintiff and each of the Accused

12   Products is not infringing and have not infringed the '497 Patent and granting Plaintiff all other

13   declaratory relief to which it may be entitled.

14   **SEVENTH CAUSE OF ACTION**

15   (Declaratory Judgment of Non-Infringement of the '537 Patent)

16   171.   Plaintiff incorporates herein by reference and re-alleges all preceding paragraphs as

17   though fully set forth herein.

18   172.   Defendant Acceleration has alleged and continues to assert that Plaintiff and its

19   Accused Products and services infringe the '537 Patent.

20   173.   The sole independent claim 1 of the '537 Patent is shown below (with claim element

21   enumeration added for convenience).

22   
| Claim 1 |
| --- |
| **1-a.** A method in a computer system for determining a diameter of a broadcast channel, the broadcast channel having computers, each computer connected to at least three neighbor computers, the method comprising: |
| **1-b.** receiving a message from a neighbor computer; |
| **1-c.** identifying a distance traveled from the received message; |
| **1-d.** setting an estimated diameter based on the identified distance traveled amount, wherein setting the estimated diameter sets the estimated diameter to the distance traveled whenever the identified distance traveled is greater than the current estimated diameter; |
| **1-e.** incrementing the distance traveled in the message; and |
| **1-f.** sending the message with the incremented distance traveled to a neighbor computer. |

28

174.   Plaintiff does not infringe any of the claims of the '537 Patent, at least because, by way of non-limiting example, the Accused Products do not meet the following claim limitations of the claim shown above: claim 1, elements 1-a, 1-c to 1-f.

175.   First, each participant in *Fortnite* is not "connected to at least three neighbor computers," as required by element 1-a. Second, *Fortnite* does not "identify[] a distance traveled from the received message," as required by element 1-c. Third, *Fortnite* does not "set[] an estimated diameter based on the identified distance traveled amount," as required by element 1-d. Fourth, *Fortnite* does not "increment[] the distance traveled in the message," as required by element 1-e. And, *Fortnite* does not "send[] the message with the incremented distance traveled to a neighbor computer," as required by element 1-f.

176.   Plaintiff's activities, Accused Products, and services have not and do not directly infringe, do not infringe by inducement, and do not contributorily infringe any enforceable claims of the '537 Patent.

177.   Plaintiff's activities, Accused Products, and services have not and do not infringe, willfully or otherwise, any enforceable claims of the '537 Patent.

178.   Plaintiff's activities, Accused Products, and services have not and do not infringe, literally or under the doctrine of equivalents, any enforceable claims of the '537 Patent.

179.   As discussed above, after making multiple, direct charges of infringement as to the six Asserted Patents discussed above, Acceleration identified the '537 Patent as an additional patent in the same patent portfolio Acceleration contends Epic needs a license to.

180.   An actual controversy thus exists between Plaintiff and Defendant as to whether the Accused Products infringe the '537 Patent.

181.   Plaintiff seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Plaintiff and each of the Accused Products is not infringing and have not infringed the '537 Patent and granting Plaintiff all other declaratory relief to which it may be entitled.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Epic respectfully prays for relief against Defendant as follows:

1.   For a declaratory judgment that:

    a.   Plaintiff has not and does not infringe, willfully or otherwise, any enforceable claim of the Asserted Patents; and

    b.   Defendant, and those acting in concert with it or acting with knowledge of the judgment herein, are without right or authority to threaten or maintain suit against Plaintiff, or users of Plaintiff's products or services, for alleged infringement of the Asserted Patents.

2.   Enjoining Defendant, its officers, agents, servants, employees, and all persons acting in concert or participation with Defendant from initiating infringement litigation against, and from threatening, Plaintiff or purchasers or users of Plaintiff's products or services with infringement litigation or charging any of them verbally or in writing with infringement of the Asserted Patents, or representing to any of them that infringement has occurred, because of any activities of Plaintiff;

3.   Determining that this is an exceptional case under 35 U.S.C. § 285;

4.   For Plaintiff's costs and reasonable attorneys' fees incurred herein; and

5.   For such other and further relief as the Court may deem appropriate.

Dated:  July18, 2019              WINSTON & STRAWN LLP

                          By    */s/ Michael A. Tomasulo*
                              David P. Enzminger
                              Michael A. Tomasulo
                              Louis L. Campbell
                              Matthew R. McCullough

                              Attorneys for Plaintiff
                              EPIC GAMES, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff Epic requests a trial by jury of all issues so triable.

Dated:  July 18, 2019

WINSTON & STRAWN LLP


By     */s/ Michael A. Tomasulo*
      David P. Enzminger
      Michael A. Tomasulo
      Louis L. Campbell
      Matthew R. McCullough

      Attorneys for Plaintiff
      EPIC GAMES, INC.