David P. Enzminger (SBN: 137065)
denzminger@winston.com
Michael A. Tomasulo (SBN: 179389)
mtomasulo@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

Louis L. Campbell (SBN: 221282)
llcampbell@winston.com
Matthew R. McCullough (SBN: 301330)
mrmccullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, California 94025-4004
Telephone:   (650) 858-6500
Facsimile:   (650) 858-6550

Attorneys for Plaintiff
EPIC GAMES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIC GAMES, INC., a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACCELERATION BAY LLC, a Delaware Limited Liability Corporation,<br><br>Defendant. | **Case No. 4:19-cv-04133-YGR**<br><br>**PLAINTIFF EPIC GAMES, INC.'S OPPOSITION TO DEFENDANT ACCELERATION BAY LLC'S MOTION TO DISMISS**<br><br>Date: October 22, 2019<br>Time: 2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .............................................................................2

STATEMENT OF FACTS ..............................................................................................................2

RELEVANT LAW ..........................................................................................................................6

ARGUMENT ...................................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3M Co. v. Avery Dennison Corp.*,
   673 F.3d 1372 (Fed. Cir. 2012)..................................................................................................8, 10

*ABB Inc. v. Cooper Indus., LLC*,
   635 F.3d 1345 (Fed. Cir. 2011)....................................................................................................6, 7

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
   975 F. Supp. 2d 1083 (N.D. Cal. 2013) .....................................................................................8, 10

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
   846 F.2d 731 (Fed. Cir. 1988)....................................................................................................10, 12

*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*,
   689 F.3d 1303 (Fed. Cir. 2012)........................................................................................................7

*Capo, Inc. v. Dioptics Med. Prod., Inc.*,
   387 F.3d 1352 (Fed. Cir. 2004)..................................................................................................12, 13

*Cat Tech LLC v. TubeMaster, Inc.*,
   528 F.3d 871 (Fed. Cir. 2008)..........................................................................................................8

*Cepheid v. Roche Molecular Sys., Inc.*,
   2013 WL 184125 (N.D. Cal. Jan. 17, 2013)..................................................................................9, 10

*Hewlett-Packard Co. v. Acceleron LLC*,
   587 F.3d 1358 (Fed. Cir. 2009).......................................................................1, 7, 8, 9, 10, 11

*Intel Corp. v. Tela Innovations, Inc.*,
   2018 WL 4859314 (N.D. Cal. Oct. 5, 2018)....................................................................................8

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)..............................................................................................6, 7, 9, 10, 11

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
   518 F.3d 897 (Fed. Cir. 2008)...............................................................................................7, 10, 12

*Rhoades v. Avon Prod., Inc.*,
   504 F.3d 1151 (9th Cir. 2007) ..........................................................................................................4

*SanDisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007).....................................................................................................4, 7

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
   497 F.3d 1271 (Fed. Cir. 2007).....................................................................................................9, 11

**Statutes**

28 U.S.C. § 2201 ................................................................................................................1, 6, 7

**Other Authorities**

Fed. R. Evid. 408 ..........................................................................................................................4

Plaintiff Epic Games, Inc. ("Epic") hereby opposes Defendant Acceleration Bay, LLC's ("Acceleration") Motion To Dismiss For Lack Of Subject Matter Jurisdiction.

## INTRODUCTION

This suit is a textbook example for jurisdiction under the Declaratory Judgment Act and is, frankly, not a close call. It has long been the law that if "a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) (quoting *Cardinal Chem. Co. v. Morton Int'l,* 508 U.S. 83, 96 (1993)).  That is exactly the case here.

Acceleration made explicit charges in multiple letters that Epic's *Fortnite* video game products infringe Acceleration's patents, which Acceleration identified by patent number. Acceleration charged that its "analysis" "indicates use of Acceleration Bay patented technologies" and that at least two identified Epic games (*Fortnite: Save the World*, *Fortnite Battle Royale*) "require a license" to Acceleration's patents. The letters include a half-page chart specifically identifying patents that Acceleration alleged are "Patents Infringed By Epic Games." Because Acceleration explicitly charged that specific Epic products infringe specific patents, "there is, *necessarily*, a case or controversy adequate to support [declaratory judgment] jurisdiction." *Id.*

Acceleration's Motion argues that the Court lacks jurisdiction, or should decline it, because Acceleration supposedly never "threatened litigation," did not provide "claim charts," and proposed a "business solution." Not only are these arguments irrelevant, they are factually incorrect.

Acceleration ***did*** threaten infringement litigation—Acceleration demanded a ███ settlement, imposed a deadline, and threatened to file suit if its demands were not met.  It further advised that its settlement demands would increase substantially if Epic missed the deadline or even asked for infringement claim charts. The suggestion of a "business solution" is farcical because Acceleration's only business *is* litigation.  Acceleration is a patent assertion entity formed by its litigation counsel for the express purpose of enforcing these patents, has at least a $15 million litigation loan for the sole purpose of enforcing these same patents, and has at all times been actively litigating these same patents against Epic's competitors. Even if Acceleration's explicit charges of infringement did not "necessarily" establish jurisdiction, every other fact does.

**STATEMENT OF ISSUES TO BE DECIDED**

(1) Does this Court have jurisdiction over Epic's declaratory judgment suit for a declaration of non-infringement, where Acceleration made multiple express charges that specific Epic products infringed specific Acceleration patents, where Acceleration offered to provide claim charts and imposed a deadline to respond to its license demand, where Acceleration is a patent assertion entity with no business other than litigation, and where Acceleration has a history of enforcing the patents against Epic's competitors and referenced those suits in its communications with Epic?

(2) Should this Court decline to exercise its broad discretion under the Declaratory Judgment Act even though Acceleration has offered no "well-founded reason[]" for declining jurisdiction and the Federal Circuit has held that where, as here, "there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute"?

**STATEMENT OF FACTS**

Plaintiff Epic Games is one of the world's leading video game companies. Complaint ¶ 1. It develops and publishes the video game *Fortnite*. *Id.* at ¶ 1. Epic released *Fortnite*'s cooperative *Save the World* and *Fortnite*'s free-to-play *Battle Royale* game modes in 2017. *Fortnite* rapidly became one of the world's most popular games with over 250 million players. *Id.* at ¶ 1.

Acceleration is an LLC with its purported place of business in this district. Its infringement letters state that Acceleration was "[f]ounded in 2012" and that it is a "technology incubator" that "partners with inventors, corporations and entrepreneurs to accelerate growth in creating innovative companies." Tomasulo Decl. Exs. 1, 2. These statements are incorrect. Acceleration was not "[f]ounded in 2012" and is not a "technology incubator." Acceleration was formed in August 2014 by Kramer Levin, the firm Acceleration retained "to monetize the [Asserted Patents.]" Tomasulo Decl. Exs. 5 & 6, at 4. Immediately after it was formed, Acceleration acquired the Asserted Patents,[1] secured at least $15 million in "litigation financing" to "pursue actions against potential infringers,"

---

[1] The Asserted Patents are U.S. Patent Nos. 6,701,344, 6,714,966, 6,829,634, 6,732,147, 6,910,069, 6,920,497 and 7,412,537 (collectively, the "Asserted Patents").

and with that money filed three suits on these same patents against Epic's competitors in the video game market. Tomasulo Decl. Ex. 6 at 3-4; Tomasulo Decl. ¶ 2. Acceleration has no products or services, and no source of funds unrelated to patent litigation. Complaint ¶¶ 10-15.

Beginning in December 2018, Acceleration communicated repeated explicit, specific charges that Epic's award-winning *Fortnite* games were infringing Acceleration's patents. In each instance, Acceleration identified the accused products by name and the Asserted Patents by number.

Acceleration first contacted Epic on December 28, 2018, when Acceleration sent a letter to Epic's head of Business Development and Engine Licensing, Mr. David Stelzer. Tomasulo Decl. Ex. 1. The December letter makes an explicit and direct charge of infringement: it identifies two Epic products by name (*Fortnite: Save the World* and *Fortnite: Battle Royale*), states that they "require a license," and states that six of the Asserted Patents are "**Patents Infringed By Epic Games**." *Id*. (emphasis added). Acceleration named this document a "Notice Letter," sent it via overnight mail and stated that it was a "MATTER REQUIRING ATTENTION." *Id*.

On March 4, 2019, Acceleration escalated matters by sending an infringement letter to the founder and CEO of Epic Games, Mr. Tim Sweeney. Tomasulo Decl. Ex. 2. Much like the first letter, this letter states that it is a "Notice Letter" that "Requir[es] Attention." *Id*. The March 4 letter again makes an explicit charge of infringement:

> The Acceleration Bay patent portfolio is rich in network gaming related inventions, and ***Epic Games has an affirmative responsibility to ensure that it has secured all necessary patent rights to sell the products and services identified in this letter, as well as others that might be infringing*** Acceleration Bay's intellectual property. We look forward to having an initial face-to-face meeting with the objective of working toward entering a patent license between our companies.
> ***Our analysis of our patent portfolio and Epic Games' multi-player games indicates use of Acceleration Bay patented technologies, at minimum, the following games require a license: Fortnite: Save the World, Fortnite Battle Royale***, and potentially other games.

*Id*. (emphasis added).

As with the December letter, the March 4 letter expressly charges infringement, stating that six of the Asserted Patents are "Patents Infringed By Epic Games":

| US Patent # | Title | File Date | Grant Date |
|---|---|---|---|
| 6,701,344 | Distributed Game Environment | 31-Jul-2000 | 2-Mar-2004 |
| 6,714,966 | Information Delivery Service | 31-Jul-2000 | 30-Mar-2004 |
| 6,732,147 | Leaving A Broadcast Channel | 31-Jul-2000 | 4-May-2004 |
| 6,829,634 | Broadcasting Network | 31-Jul-2000 | 7-Dec-2004 |
| 6,910,069 | Joining A Broadcast Channel | 31-Jul-2000 | 21-Jun-2005 |
| 6,920,497 | Contacting A Broadcast Channel | 31-Jul-2000 | 19-Jul-2005 |

*Id.*

On April 30, 2019, Acceleration emailed Mr. Stelzer a copy of the December 28 letter, stating that Acceleration had previously used multiple different media to contact him, including mail and LinkedIn messaging. Tomasulo Decl. Ex. 4. Acceleration emphasized that "this matter really requires Epic Games' sincere attention" and requested a response within a week. *Id.*

On July 9, 2019, representatives of Epic and Acceleration had a teleconference and Acceleration made a written presentation regarding the '537 patent in addition to the six previously identified patents.[2] Pence Decl. ¶¶ 2–4; Tomasulo Decl. Ex. 3. Acceleration's CEO and Head of

---

[2] Acceleration's written presentation is marked as a settlement discussion for purposes of Federal Rule of Evidence 408, but it is used here to establish jurisdiction, not prove or disprove the underlying claim. The Ninth Circuit and Federal Circuit have both held that such communications can be used to establish declaratory judgment jurisdiction. *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161–62 (9th Cir. 2007) ("Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief. This is perfectly acceptable under Rule 408."); *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1375 n. 1 (Fed. Cir. 2007) (FRE 408 "expressly relates to evidence of efforts toward compromising or attempting to compromise a claim in litigation and does not prevent SanDisk from relying on the licensing discussions and infringement study to support its [declaratory judgment] claims"). Even if this

4
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - CASE NO. 4:19-cv-04133-YGR

1  Licensing both attended the call. They started with a vague discussion of the supposed benefits of
2  "partnering" with Acceleration Bay, but quickly changed the topic to demanding money for Epic's
3  alleged patent infringement. Pence Decl. ¶¶ 5–12. Acceleration's only proposal was a demand for
4  money in exchange for settling its threatened litigation. Pence Decl. ¶ 12.

5  Instead of proposing a "business solution," Acceleration repeated the explicit charges of
6  infringement, demanded a ▬▬▬ settlement, and imposed a deadline. Pence Decl. ¶ 9;
7  Tomasulo Decl. Ex. 3. Acceleration's representatives stated Acceleration would file suit if its
8  demands were not met, and stated its demands would increase substantially if Epic missed the
9  deadline or even asked Acceleration to provide claim charts. Pence Decl. ¶ 11; Tomasulo Decl. Ex.
10 3. In addition, the presentation:

- identifies ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Tomasulo Decl. Ex. 3 at 11);
- alleges ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*id.* at 12, 13);
- threatens ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*id.* at 13);
- alleges ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*id.* at 13); and
- declared ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*id.* at 13–14).

24 Acceleration's teleconference and presentation included ▬▬▬▬▬▬▬▬▬▬▬▬
25 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
26 ▬▬▬. Pence Decl. ¶¶ 7-12; Tomasulo Decl. Ex. 3 at 13–14.  For instance, with specific reference

---

28 were not the case, the first two letters alone establish jurisdiction because they make an explicit charge of infringement. Tomasulo Exs. 1, 2.

to the accused products and Asserted Patents, the presentation discusses "▉▉▉▉▉" and "▉▉▉▉▉" and asserts that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. These are all terms of art in patent litigation and all confirm that patent enforcement, and not a business solution, was Acceleration's sole objective.

Having been threatened with a ▉▉▉-dollar infringement lawsuit against its leading products if it did not acquiesce to a ▉▉▉ license demand by September 30, Epic filed this declaratory judgment action seeking a declaration that the specific games identified in Acceleration's letters and presentation do not infringe the seven patents identified in the letters and presentation. On receipt of this Motion, the undersigned requested that Acceleration provide a covenant not to sue; Acceleration did not respond. Tomasulo Decl. Ex. 7.

## **RELEVANT LAW**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

In *MedImmune*, the Supreme Court examined declaratory judgment jurisdiction in the context of a patent license dispute. *MedImmune* explained that all that the declaratory judgment plaintiff need do is prove that the facts alleged, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127. This controversy must be "'definite and concrete, touching the legal relations of parties having adverse legal interests,'" such that the dispute is "'real and substantial'" and "'admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.*

*MedImmune* rejected the Federal Circuit's long-standing "reasonable apprehension of imminent suit" test. *See id.* at 132 n. 11. In post-*MedImmune* cases, the Federal Circuit recognized

that "*MedImmune* rejected [the] prior, more stringent standard" in favor of a more lenient test. *ABB Inc. v. Cooper Indus., LLC,* 635 F.3d 1345, 1348 (Fed. Cir. 2011). Quoting *Medimmune*, the Federal Circuit has explained that "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity" and that "putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1379 (Fed. Cir. 2007).

Thus, post-*MedImmune*, the Federal Circuit has freed potential infringement defendants from the dilemma of waiting until they are explicitly threatened with suit before bringing a declaratory judgment action. "Before the [Declaratory Judgment] Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue." *Hewlett-Packard Co.*, 587 F.3d at 1362 *(quoting Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 734–35 (Fed. Cir. 1988)). But "[a]fter the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Id.* Now, a declaratory judgment plaintiff "need not 'bet the farm, so to speak, and risk a suit for infringement by cutting off licensing discussions and continuing in the identified activity before seeking a declaration of its legal rights." *SanDisk Corp.*, 480 F.3d at 1382. Thus, the Federal Circuit has held that jurisdiction exists where "where the declaratory defendant had sent veiled warnings to the declaratory plaintiff and had already sued other companies that produced the same product accused of infringement." *ABB*, 635 F.3d at 1349 (citing *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 899–901 (Fed. Cir. 2008)).

Since *MedImmune,* in patent disputes, an actual controversy requires "an injury in fact traceable to the patentee," which exists only if the plaintiff has alleged "both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 689 F.3d 1303, 1318 (Fed. Cir. 2012).

7

Here, the second factor is undisputed because Epic already makes and sells the accused products—and already "conduct[s] [the] potentially infringing activity." *Id.* Thus, the dispute is immediate because there is "present activity which could constitute infringement." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008). Accordingly, the only question for the Court is whether Acceleration has taken "an affirmative act . . . related to the enforcement of [its] patent rights." *Id.*

While the Court must consider the totality of circumstances, it has long been the law that declaratory judgment jurisdiction always exists when a patent owner has made an explicit charge that an identified product infringes an identified patent. As the Federal Circuit explained:

> The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as "litigation" or "infringement." Of course, if "a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support [declaratory judgment] jurisdiction."

*Hewlett-Packard*, 587 F.3d at 1362 (quoting *Cardinal Chem.*, 508 U.S. at 96); *see also 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012) ("And, of course, if "a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support [declaratory judgment] jurisdiction.").

The patentee's "actions must give reason to believe that it is asserting its rights under the patents." *Intel Corp. v. Tela Innovations, Inc.*, 2018 WL 4859314, at *3 (N.D. Cal. Oct. 5, 2018). "The patentee need not explicitly threaten to sue or demand a license," but "an explicit infringement allegation . . . shows there is, necessarily, a case or controversy adequate to support declaratory judgment jurisdiction." *Id.* Indeed, "[s]o long as there is an actual charge of infringement or even an effective charge of infringement, that is enough to give rise to a case or controversy, particularly where a specific infringing product is identified by the patentee." *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1091–92 (N.D. Cal. 2013) (internal citations omitted).

## ARGUMENT

Jurisdiction "*necessarily*" exists here because Acceleration explicitly alleged infringement by accusing specific products of infringing seven specific patents. *Hewlett-Packard*, 587 F.3d at

1362. Nothing further is required. There is plainly "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. Acceleration purported to place Epic on "notice" of alleged infringement and gave Epic an ultimatum that if Epic did not pay ▮ by "▮", Epic would face the "▮" of a patent infringement lawsuit seeking ▮ times that much. Tomasulo Decl. Exs. 1-3.

Acceleration cannot—and has not—cited any case where a court has declined declaratory judgment jurisdiction after a patentee has accused a specific product of infringing a specific patent. Acceleration relies principally on *Cepheid v. Roche Molecular Sys., Inc.*, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013). But *Cepheid* found no jurisdiction because, among other things, the patentee "never identified the products for which [the patentees] believed the license to be required." *Id.* at *12. Here, Acceleration explicitly and repeatedly stated that *Fortnite: Save the World* and *Fortnite Battle Royale* "▮" the asserted patents and "require a license" with a substantial royalty. Tomasulo Decl. Exs. 1-3.

Acceleration ignores well-established law and instead offers five arguments: (1) "Acceleration Bay never threatened litigation"; (2) "Acceleration Bay never made specific infringement allegations"; (3) "ongoing negotiations confirm there is no immediate controversy"; (4) "the absence of litigation history between the parties" weighs against jurisdiction; and (5) the Court should "decline" jurisdiction because the dispute is hypothetical. Even an upside-down world where Acceleration's express and specific allegations of infringement did not "necessarily" establish jurisdiction, each of Acceleration's arguments would fail. *Hewlett-Packard*, 587 F.3d at 1362.

First, throughout its brief, Acceleration claims that it did not "threaten" litigation because it used words like "business solution," "amicably," "path forward," and "mutually acceptable plan." Dkt. 22 at 3, 5. Even setting aside Acceleration's accusations of infringement and ultimatums—which were far from "amicabl[e]"—the Federal Circuit has "reject[ed] [the] suggestion that there can be no jurisdiction in the courts because [the patentee] was at all times willing to negotiate a 'business resolution' to the dispute." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d

1271, 1286 (Fed. Cir. 2007). Indeed, the Supreme Court expressly overruled the "imminent threat" of litigation standard. *MedImmune,* 549 U.S. at 132 n. 11.

As in *ActiveVideo*, Acceleration's contention that it simply wanted to "explore the possibility of a business relationship" "borders on the frivolous." 975 F. Supp. 2d at 1092. Acceleration is "solely a licensing entity, and without enforcement it receives no benefits from its patents." *Hewlett-Packard*, 587 F.3d at 1364. It was formed by its litigation counsel and immediately acquired the Asserted Patents and commenced litigation on them against Epic's competitors using a $15 million litigation loan it secured to "pursue actions against potential infringers." Tomasulo Decl. Exs. 5, 6; *see Micron*, 518 F.3d at 901–02 (finding jurisdiction where accused infringer "watched [patentee] sue each of the other leading . . . manufacturers"); *Arrowhead*, 846 F.2d at 738 ("The law does not require enterprises to keep their heads in the sand while a patentee picks them off one by one and at its leisure."). There is no evidence that Acceleration offers any products or services or has any had any revenue, funding, or investment beyond its $15 million litigation loan. Courts have held that the fact that the patent owner is in active litigation against the plaintiff's competitors on the same patents, and is a non-practicing entity, favors a finding of jurisdiction. *See Cepheid*, 2013 WL 184125 at *7–8.

In any event, Acceleration did "threaten" litigation: its letters state that they "require attention"; they were sent to multiple people at Epic, including its founder and CEO; there were multiple follow-up attempts over a short period; a royalty was demanded, a deadline was unilaterally imposed, and Epic was advised that if it did not accept the royalty demand by the deadline, Epic would face "█████████████." Pence Decl. ¶¶ 9–11; Tomasulo Decl. Exs. 1-4.

Acceleration's second argument—that it "never made specific infringement allegations"—is mistaken, legally and factually. Acceleration's argument turns on its pre-suit communication's "lack[] [of] claim charts." Dkt. 22 at 6. But the law does not require—or even "expect"—"present[ation] [of] claim charts." *Hewlett-Packard*, 587 F.3d at 1362. In any event, Acceleration offered to provide claim charts (Pence Decl. ¶ 11), and this favors a finding of jurisdiction. *3M Co.*, 673 F.3d at 1379 (holding that jurisdiction would exist where the patentee "represent[ed] that [it] had analyzed the [accused product], and h[ad] state[d] that claim charts would be forthcoming").

1    Regardless of Acceleration's offer of claim charts, Acceleration repeatedly alleged that Epic's *Fortnite* games "▮▮▮▮" specifically-identified patents and demanded a substantial royalty. Tomasulo Decl. Exs. 1-3. Acceleration's letters state that Acceleration conducted an "analysis" of its patent portfolio and Epic's games, and the analysis "indicates use of Acceleration Bay patented technologies" and that at least two identified Epic games (*Fortnite: Save the World*, *Fortnite Battle Royale*) "require a license" to the identified patents. Tomasulo Decl. Ex. 2. The letters specifically allege that the Asserted Patents are "Patents Infringed By Epic Games." Tomasulo Decl. Ex. 1, 2. Nothing further is required. As the Federal Circuit explained, "it is implausible (especially after *MedImmune* and several post *MedImmune* decisions from this court) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege infringement." *Hewlett-Packard,* 587 F.3d at 1362. Indeed, "it is irrelevant whether [the patentee] had conducted an adequate investigation…" *Id.* at 1362. Here, because Acceleration made a specific charge of infringement against specific products, "there is, *necessarily,* a case or controversy adequate to support [declaratory judgment] jurisdiction." *Id.* at 1362.

Acceleration's third argument—that "ongoing negotiations confirm there was no immediate controversy"—is no more than a rehash of its first argument and fails for the same reasons. "[O]ngoing negotiations" do not impact jurisdiction, especially where there has been an explicit charge that an identified product infringes identified patents. *See, e.g.*, *Sony Elecs.*, 497 F.3d at 1286 (patentee's demand for royalties "based on specific past and ongoing activities" establishes jurisdiction irrespective of patentee's "apparent continued willingness to engage in licensing negotiations").  In any event, Acceleration was not "negotiating," and its "assertion appears disingenuous" after it had "asserted a patent" as being infringed by Epic's products, and "impose[d] such a short deadline for a response." *Hewlett-Packard*, 587 F.3d at 1363.  In its pre-suit communications and meeting, Acceleration never proposed a business solution, like "incorporating the patented technology into [Epic's] product[s], or . . . selling the patent." *Id.* Acceleration offered only ultimatums. Tomasulo Exs. 1-3; Pence Decl. ¶¶ 9–12.

Acceleration's fourth argument—that no jurisdiction exists because Acceleration has not previously sued Epic—is both legally irrelevant and factually misleading. No case requires prior litigation between the parties, especially where Acceleration has sued Epic's competitors on these same patents, and has demanded that Epic pay it ▬▬▬▬ or face suit. *See Micron Tech.*, 518 F.3d at 901–02; *Arrowhead Indus.*, 846 F.2d at 738.

Finally, Acceleration argues that this Court should "decline" jurisdiction over a "hypothetical dispute" because the action supposedly will not "clarify" or "settle" "the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." DI 22 at 9.  But there is nothing hypothetical about this dispute – it is concrete and capable of resolution because Acceleration explicitly charged that specific, current Epic products infringe specifically identified Acceleration patents.

This express charge of infringement, alone, establishes that the Court should not decline jurisdiction. As the Federal Circuit has stated, absent unusual circumstances not present here, when "there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute." *Capo, Inc. v. Dioptics Med. Prod., Inc.*, 387 F.3d 1352, 1358 (Fed. Cir. 2004) (quoting *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1526 (Fed. Cir. 1992)) (declaratory judgment actions evidencing a conflict of sufficient immediacy and reality should be allowed to proceed).  Acceleration's other arguments do not disturb this conclusion. Acceleration alleges that litigation is not "likely" and that there is no "specific harm that would be remedied through a declaratory judgment action." DI 22 at 9.  These are not criteria for declining jurisdiction, and they are factually wrong. Acceleration is in the business of enforcing its patents, is in active litigation against several of Epic's competitors, demanded ▬▬▬▬▬▬▬▬▬ from Epic by a specific deadline, and refused Epic's request for a covenant not to sue. Acceleration threatened Epic with a ▬▬▬▬ patent infringement lawsuit if it did not pay up, and purported to place Epic on "notice" of alleged infringement, presumably to try to trigger a claim for willful infringement. This action is a classic use of the declaratory judgment statute. *Capo,* 387 F.3d at

12
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - CASE NO. 4:19-cv-04133-YGR

1358 ("The refusal to exercise jurisdiction leaves Capo 'helpless and immobile so long as the patent owner refuse[s] to grasp the nettle and sue.'").

Given all this, there is no legal or factual basis whatsoever for Acceleration's Motion.

Dated: October 1, 2019

WINSTON & STRAWN LLP

By  /s/ Michael A. Tomasulo
David P. Enzminger
Michael A. Tomasulo
Louis L. Campbell
Matthew R. McCullough

Attorneys for Plaintiff
EPIC GAMES, INC.

13
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - CASE NO. 4:19-cv-04133-YGR