United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EPIC GAMES, INC.,** <br> Plaintiff, <br> vs. <br> **ACCELERATION BAY LLC,** <br> Defendant. | CASE NO. 4:19-cv-04133-YGR <br><br> **ORDER DENYING DEFENDANT'S MOTION TO STRIKE** <br><br> Re: Dkt. No. 53 |

Defendant Acceleration Bay LLC ("Acceleration Bay") requests that the Court strike counterclaims-in-reply asserted by Plaintiff Epic Games, Inc. ("Epic Games") in its counterclaim answer, or, in the alternative, to reclassify those counterclaims-in-reply as amendments to the complaint. (Dkt. No. 53 ("Mot.").) Having considered the papers, as well as arguments by counsel on February 11, 2020, the Court **DENIES** Acceleration Bay's motion to strike.

**I.     BACKGROUND**

Epic Games filed this action seeking a declaratory judgment of non-infringement of certain patents owned by Acceleration Bay. (Dkt. No. 1 ("Complaint").) Acceleration Bay moved to dismiss the complaint on the ground that no "case or controversy" existed between the parties. (Dkt. No. 22.) The Court rejected Acceleration Bay's motion on the record based on Epic Games' evidence that Acceleration Bay threatened Epic Games with a multi-million-dollar lawsuit over alleged infringement. (Dkt. No. 39; *see also* Dkt. No. 24.)

Following the motion to dismiss, Acceleration Bay answered the complaint and asserted counterclaims of infringement against Epic Games. (Dkt. No. 41 ("Answer").) Epic Games answered the counterclaim and simultaneously asserted six counterclaims-in-reply for invalidity of the asserted patents. (Dkt. No. 45 ("Counterclaim Answer").) Acceleration Bay then brought this motion seeking to strike or reclassify Epic Games' counterclaims-in-reply as amendments to the

complaint. Each of the pleadings concerns identical claims found in the six asserted patents.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading an insufficient defense and "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored in part because of the limited importance of pleadings in federal practice. *Gold Club-SF, LLC v. Platinum SJ Enter.*, No. 13-cv-03797-WHO, 2013 WL 6248475, at *2 (N.D. Cal. Dec. 3, 2013). The essential purpose of Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Accordingly, a court must construe the pleading in light most favorable to the pleading party and deny the motion to strike if the pled allegations might be relevant to the action. *Daily v. Fed. Ins. Co.*, No. C 04-3791 PJH, 2005 WL 14734, at *5 (N.D. Cal. Jan. 3, 2005).

## III. ANALYSIS

Acceleration Bay argues that Epic Games seeks an end-run around rules governing availability of *inter partes* review ("IPR") by bringing its patent invalidity claims as counterclaims-in-reply. Congress enacted the IPR procedure to provide a "quick and cost effective alternative[] to litigation." *See* H.R. Rep. No. 112-98, pt. 1 at 48 (2011). In order to fulfill its role of streamlining invalidity proceedings, Congress limited a party's ability to seek an IPR after commencement of civil litigation in two ways. First, under 35 U.S.C. § 315(a)(1), no IPR may be instituted if the challenger filed a civil action challenging the validity of a patent claim before filing the IPR petition. Second, under 35 U.S.C. § 315(b), an IPR may not be instituted on any petition filed more than one year after the petitioner (or a real party in interest or privy) was served with a patent infringement complaint. The twin provisions prevent an accused infringer from using the IPR mechanism as a "second bite at the apple" after challenging the validity of a patent in a district court. *Cf. Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-cv-886-jdp, 2017 WL 1382556, at *4 (W.D. Wis. Apr. 18, 2017) ("Congress intended IPR to serve as a complete substitute for litigating validity in the district court." (quoting *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1354 (Fed. Cir. 2016) (Newman, J, dissenting in part)).

2

The statutory provisions do not, however, address counterclaims-in-reply. On the contrary, 35 U.S.C. § 315(a)(3) states that a *counterclaim* challenging the validity of a patent claim "does not constitute a civil action challenging the validity of a claim of a patent" for purpose of the first statutory provision. The Patent Trial and Appeal Board ("the Board" or "PTAB") of the U.S. Patent and Trademark Office ("PTO")—which decides whether to institute an IPR—has held that counterclaims-in-reply are not subject to the bar under § 315(a)(3) because they are not "civil actions" challenging validity. *See Canfield Scientific, Inc. v. Melanoscan, LLC*, IPR2017-02125 Paper 7, 2018 WL 1628565, at \*\*3-4 (PTAB Mar. 30, 2018). In so doing, the Board noted that the policy arguments for treating counterclaims-in-reply as civil actions "have some merit." *Id*. at \*3. As the patent owner argued, exempting counterclaims-in-reply from the statutory bar "would effectively allow a Petitioner to initiate a civil action concerning a patent, but also later file a petition seeking *inter partes* review, frustrating one of the goals of these proceedings." *Id.* Nevertheless, the Board decided that these policy considerations do not override the clear meaning of the statute because "Congress has spoken, using unambiguous language." *Id*.

Acceleration Bay now argues that the Court has the sole power to prevent Epic Games from benefiting from an apparent loophole in the IPR statutory scheme. Acceleration Bay points out that district courts have frequently treated counterclaims-in-reply as equivalent to claims asserted in a complaint, making the difference between the two a "distinction without difference." Acceleration Bay also argues that nothing prevented Epic Games from asserting its invalidity claims in its original complaint. Epic Games responds that the PTAB already spoke on the issue and decided that counterclaims-in-reply "*cannot* be 'regarded as an amendment to [an] originally filed' complaint.'" Epic Games asserts that the Board's decision in *Canfield* renders the requested relief futile because the Board would continue to treat Epic Games' invalidity claims as counterclaims-in-reply regardless of how they were classified in this proceeding. Epic Games also points out that compulsory counterclaims-in-reply are generally permitted in this Circuit.

As an initial matter, nothing requires this Court to permit Epic Games' counterclaims-in-reply. The Federal Rules do not expressly authorize counterclaims-in-reply. *Frank Briscoe Co., Inc. v. Clark County*, 857 F.2d 606, 610 (9th Cir. 1988). Courts in this and other circuits have

3

generally permitted counterclaims-in-reply if they are compulsory under the rationale that the plaintiff may be barred from bringing them later.[1] *Id.*; *see* Wright & Miller, Federal Practice & Procedure, § 1188 (3d ed. Aug. 2019). However, notwithstanding their permissible nature, multiple courts have struck or reclassified counterclaims-in-reply using their inherent authority to manage dockets in order to simplify the pleadings. *See Johnson v. Johnson*, 1:15-cv-01793 MJS, 2016 U.S. Dist. LEXIS 129206, at *10 (E.D. Cal. Sept. 21, 2016) (directing party to amend its complaint instead); *Fujitsu Ltd. v. Nanya Tech. Corp.*, No. C 06-6613 CW, 2007 U.S. Dist. LEXIS 44386, at *2 (N.D. Cal. June 6, 2007) (same); *see also Electroglas, Inc. v. Dynatex Corp.*, 473 F. Supp. 1167 (N.D. Cal. 1979) (finding that counterclaims-in-reply would be better brought as amendments to the complaint). Others have permitted only compulsory counterclaims-in-reply asserted in response to permissive counterclaims—which presumably could not have been anticipated during the filing of the complaint. *E.g.*, *Feed Management Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007) (allowing only compulsory counterclaims-in-reply against permissive counterclaims).

    Nor does the Court have to consider counterclaims for declaratory judgment in any form. The Declaratory Judgment Act provides courts with discretion to consider a declaratory judgment counterclaim—but does not impose a duty to do so. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1988) (citing *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). Courts in this circuit have dismissed counterclaims for declaratory relief that were "repetitious of issues already before the court via the complaint o[r] affirmative defenses." *Ketab Corp. v. Mesriani & Assocs.*, No. 2:14-cv-07241-RSWL (MRW), 2015 WL 8022874, at *9 (C.D. Cal. Dec. 4, 2015) (citing cases). For example, courts have struck counterclaims that present identical factual and legal issues as affirmative defenses of patent or trademark invalidity. *See id.* (striking counterclaims for trademark invalidity); *Southwest Windpower, Inc. v. Imperial Elec,. Inc.*, No. CV-10-8200-SMM, 2011 WL 486089, at *3 (D. Ariz. Feb. 4, 2011) (same). *But see Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008)

---

[1] Claims for patent invalidity are compulsory against claims of patent infringement under Federal Circuit law. *In re Rearden LLC*, 841 F.3d 1327, 1332-33 (Fed. Cir. 2016).

4

(cautioning that courts should not dismiss counterclaims that "serve a useful purpose").

Epic Games' counterclaims for patent invalidity are redundant of its second affirmative defense of patent invalidity under Federal Rule 12(f). (*See* Counterclaim Answer ¶¶ 3, 18-93.) Epic Games asserts no new matters that it does not implicitly assert through its affirmative defense and addresses the same claims in the same patents asserted in Acceleration Bay's infringement counterclaim. Moreover, litigating Acceleration Bay's counterclaim for infringement will necessarily involve deciding whether Acceleration Bay owns a valid patent, which renders Epic Games counterclaim redundant of the Acceleration Bay's infringement counterclaim. *See Ketab*, 2015 WL 8022874, at *9 (claims of trademark validity will be adjudicated as part of the infringement analysis).

However, precisely because the issues raised by Epic Games' counterclaims-in-reply are redundant of its affirmative defenses, striking the counterclaims would be futile. Acceleration Bay does not contend—nor does a Court see any basis for—striking Epic Games *affirmative defenses* of patent invalidity against Acceleration Bay's infringement counterclaim. Affirmative defenses inarguably do not constitute "civil actions" subject to the IPR bar under 35 U.S.C. § 315. *See Ariosa Diagnostics v. ISIS Innovation Ltd.*, No. IPR2012-00022 (MPT), Paper 20 (PTAB Feb. 12, 2013). Thus, the question is not whether the Court should consider Epic Games' invalidity challenge—the Court will have to do so regardless—but rather whether to allow a separate counterclaim in addition to the affirmative defense of patent invalidity.[2]

Unlike an affirmative defense, a counterclaim for patent invalidity survives the dismissal of patent infringement claims and presents a standalone issue. *See Cardinal Chem. Co. v. Mortin Int'l, Inc.*, 508 U.S. 83, 100-01 (1993). The Supreme Court has expressed a preference for deciding issues of patent validity independent of any infringement claim in order to prevent wasteful re-litigation and provide final resolution to accused infringers. *Id*. (noting that "the

---

[2] Acceleration Bay cites no authority that merely "reclassifying" the counterclaims-in-reply as claims brought originally in the complaint would have any effect on the PTAB. On the contrary, unless the Court strikes Epic Games' counterclaims-in-reply and then directs it to add the invalidity claims in the complaint, the PTAB is more likely to consider the procedural posture of the claims independent of any subsequent judicial interpretation.

5

opportunity to relitigate might, as a practical matter, grant monopoly privileges to the holders of invalid patents"); *accord Stickrath*, 2008 WL 2050990, at *4 ("[A] defendant in a patent case has 'something to gain from a counterclaim declaration of invalidity'—it can go on to develop its products without fear of infringing the invalid patent" (citation omitted)). Thus, since this Court has to decide issues of patent validity regardless—and cannot prevent Epic Games from seeking an IPR while doing so—the better policy is to decide those issues once and for all by allowing Epic Games' to assert its counterclaims-in-reply independent of Acceleration Bay's infringement counterclaims.[3]

In so ruling, the Court recognizes the apparent loophole left by the statutory scheme governing IPR availability. Unlike a patent infringement defendant (which cannot bring an IPR more than one year after being sued) or a declaratory judgment plaintiff seeking a judgment of invalidity (which cannot seek an IPR at all), a declaratory judgment counterclaimant faces no apparent restrictions on seeking an IPR. In theory, a declaratory judgment counterclaimant may fully litigate the issue of patent validity in the district court, lose on the issue, and then seek a "re-do" before the PTAB while being subject to no estoppel or time limit whatsoever. Such boundless ability to seek an IPR cannot be reconciled with the clear congressional intent that the IPR serve as a "substitute" for district court litigation that relieves the burdens on the courts. Nevertheless, the statutory issue is one for Congress to resolve.[4]

Accordingly, the Court **DENIES** Acceleration Bay's motion to strike or to reclassify Epic Games' counterclaims-in-reply.

---

[3] Striking Epic Games' counterclaims-in-reply might potentially lead it to amend its complaint to add claims for declaratory judgment of invalidity—which would then subject it to the IPR bar under 35 U.S.C. § 315(a)(1). However, it seems equally likely that Epic Games would simply drop the invalidity counterclaims and rely exclusively on its affirmative defenses of invalidity. In that case, no IPR bar would apply while the Court would still have to decide issues of patent invalidity.

[4] In its opposition, Epic Games claims that Acceleration Bay waived any objection to the counterclaims-in-reply by stipulating to a partial dismissal in which Epic Games agreed not to challenge "any claims . . . other than the Asserted Claims" in an IPR. (*See* Dkt. No. 47 at 1.) Epic Games claims that this constitutes consent for Epic Games to challenge the asserted claims in an IPR. The Court disagrees, but the point is moot.

6

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** Acceleration Bay's motion to strike or to reclassify Epic Games' counterclaims-in-reply. This Order terminates Docket Number 53.

**IT IS SO ORDERED.**

Dated: April 1, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**